J-S19032-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF: GLORIA GRACE CAPOBIANCO, A POWER OF ATTORNEY | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: GERALDINE CAPOBIANCO JONES | : : | No. 3148 EDA 2019 |

Appeal from the Order Entered September 16, 2019
in the Court of Common Pleas of Philadelphia County
Orphans' Court at No(s): OC No. 1371 PR of 2016

BEFORE: BOWES, J., McCAFFERY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED JULY 21, 2020**

Geraldine Capobianco Jones ("Jones") appeals, *pro se*, from the Adjudication of Account entered by the Orphans' Court, overruling Jones's Objections to the Account filed by Nicholas Capobianco ("Accountant"), confirming the Account, and ordering Jones to pay Accountant's counsel fees. We affirm.

In its Opinion, the Orphans' Court set forth the relevant factual history as follows:

> On September 5, 2003, [Gloria G. Capobianco ("Decedent")] executed a power of attorney [(the "2003 POA")] naming Accountant as her agent. Accountant signed the acknowledgment form attached to the [2003 POA] at the time of execution…. The 2003 [POA] was later revoked when Decedent executed a second power of attorney on November 1, 2005 [(the "2005 POA")], naming her son, Otto J. Capobianco, Jr., as her agent.
>
> On May 16, 2018, [Jones] filed a [*pro se*] Petition to Compel an Accounting of Accountant's actions as Decedent's

agent. On October 16, 2018, [the Orphans' Court] issued a Decree[,] ordering Accountant to file an [a]ccount of his time as agent under the 2003 [POA]. Accountant filed his Account on November 15, 2018. The Account shows Accountant took no actions as Decedent's agent during the period of September 5, 2003, to November 1, 2005 [(the "Accounting Term")].

The Account was placed on the January audit list, and notice of the audit was given to all parties in interest. On December 24, 2018, [Jones] filed [O]bjections to the Account....

Orphans' Court Opinion, 9/14/19, at 1-2. The Orphans' Court summarized

Jones's Objections as follows:

1. Accountant fails to provide bank statements to prove he did not act as agent under Decedent's power of attorney; and

2. Accountant fails to account for various personal property[,] including "the coins that were in [Decedent's] safe for which only [Accountant] had the key," several coins belonging to Otto J. Capobianco, Jr., Decedent's diamond earrings, a Lionel train set, an engraved gold watch, and a Native American print.

*Id.* at 2.

On August 13, 2019, the Orphans' Court held a hearing on Jones's

Objections. Jones represented herself at the hearing. On September 14,

2019, the Orphans' Court entered an Order overruling Jones's Objections,

confirming the Account, and ordering Jones to pay Accountant's counsel

fees. Jones filed a timely Notice of Appeal.[1]

On appeal, Jones raises the following questions for our review:

_____

[1] The record is unclear as to whether the trial court ordered Jones to file a Pa.R.A.P. 1925(b) concise statement, and whether Jones subsequently complied.

1. Did the [Orphans' Court] err in limiting [Jones's] cross[-]examination of Accountant regarding his acts as agent under the [power of attorney] and her testimony to the period [of] 2003 to 2005?

2. Did the [Orphans' Court] err in permitting the Accountant to testify to gifts of three items allegedly made by Decedent during her lifetime, despite the bar of the Dead Man's Act[,] and without independent evidence of donative intent and delivery?

3. Did the [Orphans' Court] err in determining that such gifts were not made under or in connection with the [2003 POA] and were supported by clear, direct, and convincing evidence?

4. Did the [Orphans' Court] err in finding that Accountant performed no actions as Decedent's agent under the [2003 POA] and in dismissing the Objections?

5. Did the [Orphans' Court] abuse its discretion in imposing sanctions upon [Jones] for conduct during the hearing [that it] subsequently concluded was dilatory, obdurate, and vexatious?

6. Did the [Orphans' Court] err in failing to provide notice to [Jones] that it was considering sanctions for her hearing conduct[,] and in imposing sanctions without a separate hearing?

Brief for Appellant at 2-3 (issues reordered).

Our standard of review of the findings of an Orphans' Court is deferential. When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.

As an appellate court we can modify an Orphans' Court decree only if the findings upon which the decree rests are unsupported by competent or adequate evidence or if there has been an error of law, an abuse of discretion or a capricious disbelief of competent evidence. The test to be applied is not whether we, the reviewing court, would have reached the same result, but whether a judicial mind, after considering the

- 3 -

evidence as a whole, could reasonably have reached the same conclusion.

*In re Estate of Devoe*, 74 A.3d 264, 267 (Pa. Super. 2013) (quotation marks and citations omitted).

In her first claim, Jones alleges that the Orphans' Court erred in limiting her cross-examination of Accountant to actions he took during the Accounting Term. *See* Brief for Appellant at 14-17. Jones claims that Accountant, acting as agent for Decedent, gifted himself property after the Accounting Term. *Id.* at 13. According to Jones, Accountant was unaware that he was no longer Decedent's agent after November 1, 2005, pursuant to the 2005 POA. *Id.* at 15-17. Jones argues that, therefore, Accountant's actions after the 2005 POA were relevant to his service as Decedent's agent. *Id.*

Jones fails to identify the questions she was prevented from asking, and fails to provide citations to the record where the Orphans' Court made such rulings.[2] Nevertheless, our review of the record reveals that Jones may be referring to the Orphans' Court's statement that she had "the right to cross-examine [Accountant] with regard to the time period 2003 to 2005."

---

[2] Additionally, Jones fails to cite any relevant case law in support of her claim. "[F]ailure to develop an argument with citation to, and analysis of, relevant authority waives that issue on review." *Harris v. Toys "R" Us-Penn, Inc.*, 880 A.2d 1270, 1279 (Pa. Super. 2005); Pa.R.A.P. 2119(a) (requiring argument section of brief to present discussion of pertinent authority). However, we decline to find Jones's claim waived.

*See* N.T., 8/13/19, at 43. Jones may have believed that this limited her ability to question Accountant regarding actions taken outside of the Accounting Term. However, the Orphans' Court stated that she could question Accountant regarding actions taken outside of the Accounting Term, "but not in the context of what [Accountant] should have done as a power of attorney, because he wasn't acting so." *Id.* Therefore, the Orphans' Court did not limit Jones's ability to question Accountant regarding actions taken outside of the Accounting Term, but instead advised Jones to avoid asking Accountant to speculate on what he would have done if he was still acting as Decedent's agent. Additionally, the Orphans' Court in fact permitted Jones to question Accountant regarding actions taken during time periods outside of the Accounting Term. *See* N.T., 8/13/19, at 48-49 (wherein Jones asked Accountant whether he took action in 2011 and 2012, and Accountant gave a response). Accordingly, this claim lacks merit.

In her second claim, Jones alleges that the Orphans' Court erred by permitting Accountant to testify about items he was purportedly gifted by Decedent. *Id.* at 17-18. Jones argues that the Dead Man's Act[3] rendered Accountant incompetent to testify regarding the gifts. *Id.* Jones claims that Accountant's testimony satisfied all of the conditions to qualify under the Dead Man's Act. *Id.*

---

[3] 42 Pa.C.S.A. § 5930.

Pennsylvania Rule of Appellate Procedure 302 provides that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302. "Hence, only claims properly presented in the lower court are preserved for appeal." **Coulter v. Ramsden**, 94 A.3d 1080, 1089 (Pa. Super. 2014).

Our review of the record reveals that Jones never raised with the Orphans' Court a challenge to Accountant's competency to testify under the Dead Man's Act. The first time Jones raised this issue was in her appellate brief. Accordingly, this issue is waived. **See** Pa.R.A.P. 302; **Coulter**, **supra**.

We next consider Jones third and fourth claims together, as they both challenge the Orphans' Court's determination that the Account was complete. In her third claim, Jones alleges that the Orphans' Court erred in finding that Accountant had not disposed of certain properties, as agent for Decedent, after the 2005 POA removed him as Decedent's agent. **See** Brief for Appellant at 15. Jones argues that Accountant was not aware that he was removed as Decedent's agent in 2005, and that he disposed of certain properties pursuant to the 2003 POA, subsequent to the formation of the 2005 POA. **Id.** at 14. In her fourth claim, Jones alleges that the Orphans' Court erred in finding that Accountant performed no actions as agent for Decedent. **Id.** at 12-14, 15. Jones argues that Accountant failed to prove that he had not disposed of any property pursuant to his role as agent for

Decedent. *Id.* According to Jones, Accountant's testimony was insufficient to meet his burden, and she had presented two witnesses who proved that Accountant had disposed of assets in his role as Decedent's agent. *Id.* at 13.

Here, Accountant testified that he took no action as Decedent's agent:

Q. So have you ever taken any action under [the 2003 POA]?

[Accountant]: No.

Q. Have you ever written checks on any of [Decedent's] accounts using [the 2003 POA]?

[Accountant]: No.

Q. Have you ever added your name to an account of [Decedent] using [the 2003 POA]?

[Accountant]: No.

Q: Have you ever taken any action with regard to [Decedent's] personal possessions under the terms of [the 2003 POA]?

[Accountant]: No.

Q. The objections that were filed by [Jones,] she had alleged a variety of different assets that she believes that you had taken control of under the terms of the [2003 POA]. Are you familiar with the objections that she's filed?

[Accountant]. Yes.

Q. And did you take action with regard to any of the items that were listed in the power of attorney?

[Accountant]: No, I did not.

*See* N.T., 8/13/19, at 10-11. Accountant then testified that he did not take any action, in his power as agent for Decedent, with regard to each of the items listed by Jones in her Objections. *Id.* at 12-18.

The Orphans' Court found Accountant's testimony to be credible. ***See*** Orphans' Court Opinion, 9/14/19, at 4; ***see also In re Estate of Devoe***, 74 A.3d at 267 (stating that "[b]ecause the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion."). Based on our review of the record, we conclude that the Orphans' Court did not abuse its discretion in confirming the Account. Accordingly, Jones's third and fourth claims lack merit.

We next consider Jones's fifth and sixth claims together, as they both challenge the Orphans' Court's imposition of counsel fees upon Jones. In her fifth claim, Jones alleges that the Orphans' Court erred in imposing the counsel fees. ***See*** Brief for Appellant at 19-25. According to Jones, the Orphans' Court "penalized [her], a *pro se* party, for her ineffectiveness, disorganization, and inexperience (or lack of demonstrated legal training) at the hearing." *Id.* at 20. Jones argues that her conduct was not "dilatory, obdurate or vexatious," or "in bad faith" as those terms are defined at 42 Pa.C.S.A. § 2503(7) and (9). *Id.* at 20, 22-25. In her sixth claim, Jones alleges that the Orphans' Court erred in failing to give her notice that it was considering imposing counsel fees upon her. *Id.* at 19, 21-22.

Section 2503 states, in relevant part, that

> The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:
>
> * * *

(7) Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter.

42 Pa.C.S.A. § 2503(7).

The trial court has great latitude and discretion with respect to an award of attorneys' fees pursuant to a statute. In reviewing a trial court's award of attorneys' fees, our standard is abuse of discretion. If there is support in the record for the trial court's findings of fact that the conduct of the party was obdurate, vexatious or in bad faith, we will not disturb the trial court's decision. Obdurate is defined as unyielding or stubborn.

*In re Padezanin*, 937 A.2d 475, 483-84 (Pa. Super. 2007) (citations omitted).

In its Opinion, the Orphans' Court explained that an award of counsel fees was appropriate because

[Jones's] overall performance suggested little in the way of preparation, organization, or understanding of either the rules of procedure, evidence, or decorum. Time and again the [Orphans'] Court cautioned [Jones] to narrow her focus, ask concise and probing questions, and refrain from outbursts, and [Jones] consistently defied these warnings. N.T.[,] 08/13/19, at 5-6, 20, 21-22, 23-25, 30, 31-33, 34-35, 41-43, 47, 50, 54, 55-58, 59, 61-64, 66, 67, 72-73, 75, 76-77, 78, 84-85, 86, 89, 93, 96, 100-05, 117, 119-22. Both the outbursts themselves and the [Orphans'] Court stopping the proceeding to address them turned what should have been a straightforward hearing on two objections into a grueling, drawn-out farce.

Theatrics and hyperbole are no substitute for persuasive evidence and sound reasoning; nevertheless, [Jones] regularly, and at length, launched into harangues covering several topics, including [what is morally] right and wrong. Later, having exhausted the English language, [Jones] resorted to pantomime as she threw her arms in the air and held them there as a sign of her frustration. [Jones] lowered her arms only after a reprimand by the [Orphans'] Court. Later still, and once more capable of

- 9 -

speech, [Jones] knowingly, and repeatedly, made baseless objections which ground the proceeding to a halt.

    … Instead of illuminating the issues, [Jones] spoke an infinite deal of nothing and, in doing so, buried the issues under a mound of chaff. The benefits of an excavation are dubious at best. Consequently, [Jones] failed to support her objections to the Account or undermine Accountant's credibility. In fact, as if to underscore the absurdity of the proceeding, [Jones] completely abandoned several of her objections during her closing argument. *Id.* at 126 [(wherein Jones stated that "As for the diamond earrings, even though that was a big, whatever, I really don't think [Accountant] has them. So I'm just going to let them go. I really don't think he has them.")], 128 [(wherein Jones stated, "So now we move on to the watch. [Jones's] brother] says it doesn't matter anymore. He's going to forego the watch.")], [129-]130 [(wherein Jones stated that "We understand that we have no proof that [Accountant] did any banking activity. I understand that. I didn't realize that was something that I was going to have to have with me. So I don't have any banking statements. So I guess we're going to drop all of that.")]. This alone demonstrates a staggering lack of concern for the time, energy, and money expended by all those involved in the hearing.

    While [Jones's] subpar performance at the hearing could be due to her status as a *pro se* litigant, the [Orphans'] Court is not convinced this adequately explains her bizarre conduct. …

    … If ever a case warranted sanctions under Section 2503, this is it. Given the totality of the circumstances—[Jones's] persistent disregard of the [Orphans'] Court's instructions as well as her obstreperous behavior, scattershot presentation, and final abandonment of her objections—the [Orphans' C]ourt finds [Jones's] conduct during the hearing was dilatory, obdurate, and vexatious."

Orphans' Court Opinion, 9/14/19, at 5-7 (footnote omitted; some citations to record omitted).

We agree with the sound reasoning and determination of the Orphans' Court, as set forth in its Opinion, and therefore affirm on this basis with regard to Jones's fifth claim. **See id.**; **In re Padezanin**, **supra**.

Regarding Jones's sixth claim, the conduct which led to the award of counsel fees occurred during the hearing. **See id.** At the conclusion of the hearing, Accountant presented an oral Motion for counsel fees. **See** N.T., 8/13/19, at 135-42. The Orphans' Court subsequently provided Jones with an opportunity to respond to the Motion, **id.** at 142-44, and following the hearing, entered its Order awarding counsel fees. Accordingly, the record belies Jones's assertion that she was not given notice of the Orphans' Court's intention to order counsel fees. Jones was, in fact, present when Accountant requested counsel fees, and was given an opportunity to respond. Accordingly, this claim lacks merit.

Based upon the foregoing, we affirm the Orphans' Court's Order overruling Jones's Objections to the Account filed by Accountant, confirming the Account, and ordering Jones to pay Accountant's counsel fees.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/21/20

- 11 -